**BALBOA INSURANCE COMPANY**

v.

**The UNITED STATES.**

**No. 295–82C.**

United States Claims Court.

Oct. 24, 1983.

DeWitte Thompson, Atlanta, Ga., for plaintiff.

Sara V. Greenberg, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, for defendant. David M. Cohen and Thomas W. Peterson, Washington, D.C., of counsel.

## OPINION

SPECTOR, Senior Judge.

Defendant has moved to dismiss plaintiff's complaint under Rule 12(b)(4) on the grounds that it fails to state a cause of action upon which relief can be granted. The complaint alleges breach of plaintiff-surety's "takeover" agreement with the United States which was entered into following default of a Government construction contractor bonded by plaintiff-surety.

### Facts as Pleaded [1]

On December 13, 1976, the Federal Aviation Administration (FAA) entered into a contract with the Small Business Administration as prime contractor, and Southwest Construction Company as subcontractor, for construction of an airport surveillance radar facility to be located at Standiford Field, Louisville, Kentucky. Plaintiff executed a

performance bond as surety warranting Southwest's performance.

By letter dated April 28, 1977, the FAA terminated the right of Southwest to proceed on the project by reason of nonperformance. On the same day, the FAA made a demand upon plaintiff to complete the project in accordance with its bond. Thereafter, on May 19, 1977, the FAA and plaintiff entered into a surety "takeover" agreement under which the latter undertook to complete the remainder of the work.

The takeover agreement provides in pertinent part that:

> [The] FAA agrees to pay the sum of $69,106.00, representing the contract balance retained on said project to surety in accordance with the terms of the original contract between FAA and Southwest Construction Company had there not been a default. Said payments are to be made directly to the completion contractor specified by surety after approval of all said payments by surety.

On the same day plaintiff entered into a contract with Milton Contracting Company to complete the actual work on the project on plaintiff's behalf. Milton subsequently assigned its right to payment under its contract with plaintiff to the Action Capital Corporation, and plaintiff received notice of that assignment.

In the latter part of May or early June 1977, Milton began performance on its completion contract, and in June 1977, Milton submitted a progress payment request to plaintiff-surety in the amount of $36,000. This payment request was forwarded to the FAA on June 16, 1977, and plaintiff's representative directed the FAA contracting officer to make the payment to Milton Construction Co., in care of Action Capital Corp. The FAA, contrary to plaintiff's direction, made this progress payment directly to Milton. Subsequent payments under the contract were, however, made care of Action Capital, as plaintiff had specified and directed.

---

1. For the limited purpose of evaluating a motion to dismiss for failure to state a claim upon which relief can be granted, the facts alleged by the plaintiff in its petition are regarded as established. *Featheringill v. United States,* 217 Ct.Cl. 24 (1978).

Action Capital sued plaintiff for payment of the money which the FAA had paid directly to Milton. In that case, a jury rendered a verdict in favor of Action Capital in the amount of $33,296, plus interest, and that judgment was affirmed on appeal.[2] Balboa now seeks to recover from the United States its compensatory and consequential damages, including the cost of defending itself on the claim brought against it by Action Capital.

## Discussion

 As a general rule, a motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted.[3] Therefore, the question is whether in the light most favorable to plaintiff and with every doubt resolved in plaintiff's behalf, the complaint states any claim for relief.[4] A motion brought under Rule 12(b)(4) should be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[5]

██ Accordingly, defendant argues the "plain meaning" rule of contractual interpretation, namely, that if a writing appears clear and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any kind.[6] That rule would exclude the use of parol evidence relating to events prior to or contemporaneous with the formation of an integrated contract in determining the meaning of contractual terms unless those terms are inherently ambiguous and subject to more than one reasonable interpretation. Defendant then focuses on the specific language in the takeover agreement to the effect that payments shall be made "directly to the completion contractor specified by surety after approval of payments by surety." As argued by defendant, this portion of the takeover agreement unambiguously requires the FAA to pay the completion contractor directly. Consequently, it is argued, the Government had the right to ignore plaintiff's directions to pay Milton "care of" Action Capital. It is noteworthy, as related above, that subsequent payments were in fact made in accordance with those directions, that is, in "care of" Action Capital, and there is no dispute with respect to those subsequent payments.

Plaintiff responds with the argument that it was reasonable to interpret the payment provision to require the FAA to pay the plaintiff, as the party to the takeover agreement, or whomever the plaintiff specifies, following plaintiff's approval of the payment; that its approval was conditioned upon payment to Milton, "care of" Action Capital. Observing that the overriding purpose in construing a contract is to arrive at an interpretation which will give effect to all of the contractual terms,[7] plaintiff states as follows:

2. *Action Capital Corp. v. Balboa Ins. Co.*, 715 F.2d 578 (11th Cir.1983).

3. Wright & Miller, *Federal Practice & Procedure: Civil* § 1357 n. 64 (p. 598) and accompanying text.

4. *Id.* at p. 601.

5. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In its reply brief, defendant asserts that the "plaintiff has failed to properly preserve a dispute of fact for determination at trial" by failing to file any affidavits. Defendant cites *Pacific Far East Line, Inc. v. United States*, 206 Ct.Cl. 378, 513 F.2d 1355 (1975), as supporting that assertion. But that case has no bearing on the issue. It involved the court's analysis of cross-motions for summary judgment. In contrast, a motion to dismiss for failure to state a claim upon which relief may be granted is judged on the basis of the plaintiff's well-pleaded complaint, not on affidavits.

6. J. Calamari & J. Perillo, *Contracts* 98 (1970). See also *American Science and Engineering, Inc. v. United States*, 229 Ct.Cl. 47, 663 F.2d 82 (1981); *S.W. Aircraft, Inc. v. United States*, 213 Ct.Cl. 206, 212, 551 F.2d 1208, 1212 (1977); *Hotpoint, Inc. v. United States*, 127 Ct.Cl. 402, 117 F.Supp. 572, *cert. denied*, 348 U.S. 820, 75 S.Ct. 32, 99 L.Ed. 647 (1954).

7. See *SCM Corp. v. United States*, 230 Ct.Cl. ——, 675 F.2d 280 (1982), which holds that "[a]n interpretation which gives reasonable meaning to all provisions is preferred to one which renders a provision useless or meaningless."

In this case, ignoring the phrase " * * * specified by surety (Balboa) after approval of all said payments by surety," cannot be justified. The first sentence of the clause quoted above establishes that the *right* to receive payment under the contract belongs solely to Balboa. The last sentence of the clause deals only with the manner of payment under the contract. The wording of the sentence recognizes the proprietary interest of Balboa in the funds to be disbursed by the FAA and preserves Balboa's right to control such disbursements. Under the contract, Balboa has an absolute right to receive payment from the FAA, "in accordance with the terms of the original contract between the FAA and Southwest Construction had there not been a default." It would be inconsistent with this right to construe the very next sentence of the contract as giving the FAA the power to disregard completely Balboa's request regarding manner of payment. Moreover if, as the FAA contends, the FAA could only make payment to the "completion contractor," and only the FAA could determine who the "completion contractor" is, then the phrase " * * * specified by surety after approval by surety" is rendered meaningless surplusage.

In accordance with the contract, plaintiff had "specified" Milton, care of Action Capital. In determining "whether a reasonable man could attach [that meaning] to the manifestation,"[8] the course of performance under the contract may be considered. The fact that plaintiff interpreted the contract as authorizing it to specify that payment could be made to Action Capital, and the fact that all subsequent payments were in fact made to Action Capital, is evidence that reasonable persons could attach varying interpretations to the provision, including that intended by plaintiff. It is argued, moreover, that the "plain meaning" rule applies only to integrated contracts, or integrated portions thereof. The very terms of the payment provision in this case leave the identity of the "completion contractor" to be later specified by plaintiff, following later approval of the payment by plaintiff. Therefore, the identity of the payee was not resolved in the agreement itself.

Even if the defendant's narrow interpretation of the takeover agreement is assumed, arguendo, defendant would still not be entitled to have this claim dismissed as a matter of law. Plaintiff directed the contracting officer to pay Milton, care of Action Capital Corp. This was notice to the contracting officer that plaintiff did not intend nor want the payment to be sent directly to Milton. Plaintiff therefore contends that the FAA should be estopped from asserting its present interpretation of the contract since plaintiff relied to its detriment on a contract provision requiring the FAA contracting officer to make payment as directed "to the completion contractor specified by surety."

Defendant responds that "[e]ven if the facts of this case support a claim of equitable estoppel, it is well established that this theory is not available against the federal government." It cites *EWG Associates, Ltd. v. United States,* 231 Ct.Cl. —— (1982), and *Wertz v. United States,* 2 Cl.Ct. 45 (1983), as supporting this proposition. But the cited cases are inapposite. They deal with the creation of implied contracts, not with issues relating to performance or enforcement of existing express contracts. In any event, whether the plaintiff can establish the facts necessary to support equitable estoppel, as a second theory of relief, is a matter for proof at trial.

Finally, defendant contends that damages cannot be awarded to plaintiff for the costs of defending itself in the lawsuit brought against it by Action Capital in the Eleventh Circuit. The issue of damages is one of fact and law and is not now appropriately before the court on a motion to dismiss for failure to state a cause of action.[9]

---

**8.** *Restatement, Contracts* § 235(e).

**9.** *Cf. Kings Electronics Co. v. United States,* 169 Ct.Cl. 433, 341 F.2d 632 (1965), *quoting,*

*Western Contracting Corp. v. United States,* 144 Ct.Cl. 320 (1958), as follows: "This court has many times held that the measure of damages is not an exact science calling for a hard

*Conclusion*

It is concluded that there are sufficient indications of factual issues requiring resolution, and consequently theories of relief, so as to preclude allowance of defendant's motion to dismiss. Accordingly, that motion is hereby DENIED. The parties shall hereafter proceed in accordance with the applicable rules of the court.

James L. Malone, Chicago, Ill., for plaintiffs. Eillen B. Trost, Carleen S. Davis and McDermott, Will & Emery, Chicago, Ill., of counsel.

Mary M. Abate, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant. Theodore D. Peyser Jr., Washington, D.C., of counsel.

and fast rule, but is a determination based upon the facts and circumstances of each case."