Donald A. ADAMS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 154–83C.

United States Claims Court.

Oct. 31, 1983.

Alan E. Wolin, Mineola, N.Y., for plaintiff.

Robert A. Reutershan, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant.

## ORDER

NETTESHEIM, Judge.

Defendant has moved to dismiss the complaint under RUSCC 12(b)(4) for failure to state a claim upon which relief can be granted.[1]

## FACTS

For the purpose of ruling on a motion under RUSCC 12(b)(4), the facts alleged by plaintiff are regarded as established. *See, e.g., Balboa Insurance Co. v. United States,* 3 Cl.Ct. 543, at 544 n. 1 (1983) (SPECTOR, S.J.).

On May 4, 1965, plaintiff, a Special Agent with the Federal Bureau of Investigation (the "FBI"), now retired, was injured in an automobile accident, caused by mechanical defect, while on official business. Plaintiff immediately submitted Workers' Compensation forms CA–1 and CA–2, which were forwarded to the Office of Workers' Compensation Programs (the "OWCP") on or about May 11, 1965. Thereafter, plaintiff continued to submit regular Notice of Reoccurrence of Injury Claim forms to his supervisor, Special Agent in Charge J. Gordon Shanklin ("Shanklin"). Plaintiff's condition deteriorated, resulting in his hospitalization from April 24, to June 30, 1967. Compensation payments to plaintiff were repeatedly delayed. As a consequence, during his hospitalization plaintiff was forced to use 286 hours of sick leave and 170 hours of annual leave.

In the latter part of 1967, Shanklin informed plaintiff that he had discarded the application for compensation benefits which would have covered the period of plaintiff's hospitalization, for fear that he would be taken to task for having allowed plaintiff to drive a defective car. Plaintiff then submitted a new application for benefits covering the period in question. The OWCP approved this application on January 5, 1968.

In June 1977 plaintiff discovered that Shanklin had never filed a proper report of the May 1965 accident and had not submitted according to procedure all subsequent compensation claims to the OWCP. Shanklin's failure to do so had been the cause of the delays in compensation payments to plaintiff.

Plaintiff then consulted the FBI about the possibility of "buying back" the leave he had been forced to use in 1967.[2] Although permitting him to buy back the sick leave, the FBI, on February 12, 1978, advised plaintiff that if he bought back the annual leave he would forfeit that part of it which exceeded the annual leave carry-over limitations of 5 U.S.C. § 6304(a) (Supp. IV 1980).[3] The Comptroller General upheld this determination, *Donald A. Adams,* B–204522 (Mar. 23, 1982), rejecting plaintiff's argument that the leave so forfeited qualified for restoration under 5 U.S.C. § 6304(d) (Supp. V 1981).[4] Plaintiff now seeks to be compensated for having had to

---

1. Defendant also raises the defense of laches. Because of its disposition of this case, the court does not reach the issue of laches.

2. 20 C.F.R. § 10.310 (1983), provides in pertinent part:

    An [injured] employee may decide to take sick and/or annual leave in order to avoid possible interruption of income. If such employee does so decide and his or her claim for [workers'] compensation is subsequently approved, such employee may arrange with his or her employing establishment to "buy back" the leave used [paying for it with the compensation award] and have it reinstated to such employee's account.

3. 5 U.S.C. § 6304(a) provides:

    Except as provided by subsections (b), (d), (e), (f), and (g) of this section, annual leave ... which is not used by an employee, accumulates for use in succeeding years until it totals not more than 30 days at the beginning of the first full biweekly pay period, ... occurring in a year.

4. 5 U.S.C. § 6304(d) provides in part:

    (1) Annual leave which is lost by operation of this section because of—
    (A) administrative error ...; shall be restored to the employee.

use the annual leave during his hospitalization in 1967.

## DISCUSSION

■ In evaluating defendant's motion to dismiss, the second amended complaint has been tested against the standard commanding denial of the dismissal motion " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Balboa Insurance Co.*, 3 Cl.Ct. at 545 & n. 5 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1975) (footnote omitted)). The problem, however, lies in plaintiff's articulation of his claim. The court therefore has scoured the second amended complaint to find any claim for relief that can be entertained by the Claims Court.[5]

Plaintiff's second amended complaint based his claim on acts of Congress, alleging that "defendant's determination denying him his right to buy back the said annual leave or be compensated in some other mutually satisfactory manner is violative of 5 U.S.C. Section 6302(f) and 5 U.S.C. Section 6304(d). . . ." Second Amended Compl. ¶ 34.[6]

In its July 19, 1983 order requiring plaintiff to file a second amended complaint, the court noted that a valid claim for restoration of leave under 5 U.S.C. § 6304(d) and liquidation under 5 U.S.C. § 5551 (Supp. V 1981), of the leave so restored would be cognizable in this court. *Adams v. United States*, No. 154–83C, slip. op. at 4 (Cl.Ct.

July 19, 1983) (order striking first amended complaint); *cf. Lindsey v. United States*, 214 Ct.Cl. 574, 566 F.2d 1190 (1977). Plaintiff has not stated such a claim. To be restored under 5 U.S.C. § 6304(d), annual leave must have been forfeited by operation of 5 U.S.C. § 6304(a) because of administrative error. Plaintiff has not forfeited any leave under section 6304(a)—he has used the leave. Therefore, the leave cannot be restored under section 6304(d). *Helen B. Wakus*, Unpub.Comp.Gen. B–184008, Mar. 7, 1977; *Betty J. Anderson*, Unpub.Comp.Gen. B–182608, Aug. 9, 1977.

■ If plaintiff were to buy back the used annual leave, as he seeks to do, he would forfeit some of it under section 6304(a), but the other requirement for restoration under section 6304(d) that the forfeiture be caused by administrative error—consisting here, presumably, of Shanklin's conduct—would remain unsatisfied. Shanklin's conduct would not have caused plaintiff to buy back, and thereby forfeit, the leave.

A claim to buy back leave pursuant to 20 C.F.R. § 10.310 (1982), quoted *supra* note 2, is not cognizable in this court because such a claim cannot result in a money judgment—a prerequisite to this court's jurisdiction. *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Plaintiff has alleged no necessity to buy back the leave, such as existed in *Walter E. Blank*, 58 Comp.Gen. 507 (May 9, 1979). In that case plaintiff, in order to receive continuation of pay to which he was entitled, was forced to buy back leave which he had been

---

5. The court has extended plaintiff every reasonable benefit of the doubt. After defendant moved to dismiss the original complaint, plaintiff altered his theory of relief. Defendant's reply expressed mystification as to what it was that plaintiff sought. In oral argument the court suggested a legal theory plaintiff might be advancing, denied the Government's motion without prejudice, and allowed plaintiff to file an amended complaint. Plaintiff timely complied, but again failed to articulate a meaningful claim at law. The court struck the amended complaint and ordered that a second amended complaint be filed. These background events are discussed in an unpublished order. *Adams v. United States*, No. 154–83C, slip op. at 3–4 (Cl.Ct. July 19, 1983) (order striking first

amended complaint). The second amended complaint sparked another round of briefing, culminating in this decision.

6. 5 U.S.C. § 6302(f) (1976), provides:

An employee who uses excess annual leave credited because of administrative error may elect to refund the amount received for the days of excess leave by lump-sum or installment payments or to have the excess leave carried forward as a charge against later-accruing annual leave, unless repayment is waived under section 5584 of this title.

This statutory provision is clearly inapplicable. Section 6304(d) is quoted *supra* note 4.

required to use by defendant's erroneous denial of his claim for the continuation of pay. This case is unlike *Lindsey* wherein the transfer of used leave from plaintiff's annual leave to his sick leave account resulted in plaintiff's receiving a larger lump-sum payment under 5 U.S.C. § 5551.

"A complaint may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim...." 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 12.08 (2d ed. 1983). The gravamen of the complaint in the case at bar is that plaintiff was forced to use annual leave during a period of hospitalization, whereas he would have preferred to use it at some other time. Plaintiff's claim is for compensation for this incommodity. As such, his claim is not founded upon the Constitution, an act of Congress, or regulation of an executive department or upon any express or implied contract with the United States. Plaintiff therefore has not stated a claim for which relief may be granted by this court. 28 U.S.C. § 1491(a), *amended by* the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 133(a), 96 Stat. 39 (1982).

## CONCLUSION

Defendant's motion to dismiss the complaint is granted, and the Clerk shall enter judgment dismissing the second amended complaint with prejudice.

IT IS SO ORDERED.